Caton, J. The only question in this case is, whether a party who has given a note for goods purchased at an administrator’s sale, may show in his defence to the note, that the administrator fraudulently represented the goods to be sound, when he knew them to be unsound. This precise question was decided in the case of Rice v. Richardson, 3 Alabama, 438, where such a defence was held to be admissible. Of the correctness of that decision I entertain no doubt. It is sustained by every principle of reason, of justice, and of public policy. It would never do to allow administrators, and other fiduciary officers, to exert their ingenuity in perpetrating frauds, and by that means obtain the notes of individuals, and then allow them to say that they had committed the fraud, not for their own benefit, but for that of the estate. Such an end cannot sanctify such means. There is no merit in the estate to authorize the enforcement of a demand thus obtained, more than there would be, had the fraud been committed by, and the note given to, the intestate. It is not making the estate responsible for the fraud of the administrator, for it loses nothing as a penalty for that fraud, which originally belonged to it, but it is preventing the collection of a claim to which the estate has no just right. The contract is executory, and being founded in fraud, cannot he enforced. Had the contract been executed, it might be impracticable to allow the money received to be recovered back, and the injured party would have to seek redress against the administrator personally. But' the rule must be different where the contract is executory. To put an extreme case, yet one precisely within the rule contended for by the administrator. Let an administrator take a quantity of saw-dust, found on the estate of his intestate, and put it up in chests, marked as a genuine article of tea imported from China, throw it into the market and sell it at auction for tea, as a part of the assets in bis hands, for ten thousand dollars, and take notes for the amount, could the administrator be allowed to collect those notes? In that case it would he hut poor consolation to the victims, while making them pay their notes, to satisfy the debts of others against an insolvent estate, to tell them that they may sue an irresponsible administrator, and make him answer personally for the fraud. Had this note been given to the intestate, under the same circumstances, no one would deny the admissibility of the defence, yet there would be just as much merit in the claim then as now. The law cannot sanction a fraud by enforcing a contract impregnated with it. If the administrator makes representations which he knows to be untrue, for the purpose of deceiving the purchaser, who is thereby deceived, without that degree of negligence on his part, which will throw the responsibility of the deception upon himself, wc hold that he may show that fraud in defence to the note. This does not dispense with the application of the rule, caveq| emptor, to such sales. I know of no case where that rule has ever been so applied as to excuse a fraud. The utmost vigilance may often be unable to guard against the practices of the fraudulent. As has been repeatedly decided by this Court, in the absence of fraud, the purchaser at such sales must not only look out for the title, but for the quality of the article which he purchases. Nor can the administrator bind the estate, by a warranty of either. If he assumes to do so, he would be personally responsible upon such warranty. This is carrying the doctrine of risk to the purchaser and immunity to the estate far enough. To go farther, and sanction the practice of a fraud, would tend to drive all prudent men from such sales, which would prove a serious detriment to estates. The evidence should have been admitted. The judgment is reversed and the cause remanded. Judgment reversed.